### CHANDLER v. NEFF, Governor, et al.

(District Court, W. D. Texas, San Antonio Division. April 5, 1924.)

#### No. 274.

1. **Injunction ⬅85(2)—Equity court is without power to restrain enforcement of state law on ground that it deprives complainant of political rights guaranteed by Constitution.**

   A court of equity is without power by injunction to restrain enforcement of a state statute on the ground that it deprives complainant of political rights guaranteed him by the Constitution of the United States.

2. **Injunction ⬅85(2)—Judicial Code, § 266, does not enlarge the powers of a court of equity to grant injunctions.**

   Judicial Code, § 266, as amended (Comp. St. § 1243), does not enlarge the powers of a court of equity to grant injunctions, nor does it affect the authority of the District Judge to determine the sufficiency of a bill. or the right to an injunction on the merits, but applies only to procedure on a motion for an interlocutory injunction.

3. **Constitutional law ⬅206(5), 215, 274—Party primary not an election, and right to vote therein not protected by Fourteenth and Fifteenth Amendments.**

   A primary of a political party is not an election, and the right of a citizen to vote therein is not within those protected by the Fourteenth and Fifteenth Amendments.

4. **Elections ⬅126(1)—"Primary election" defined.**

   A "primary election" is generally understood to be one limited to qualified electors of a political party, for the purpose of nominating that party's candidates, to be voted on at a future election of the people generally.

   [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Primary Election.]

5. **Constitutional law ⬅206(1)—Privileges and immunities protected are such only as depend immediately on the Constitution.**

   The privileges and immunities of citizens, which the states are forbidden to deny or abridge by the Fourteenth Amendment, are such as depend immediately on the Constitution of the United States, and which inure to citizens of the United States in that relation and character, and not such rights as accrue from state citizenship.

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**6. Constitutional law ⟨⟩206(5), 215, 274—Elections ⟨⟩12—Texas statute prohibiting negroes from voting at Democratic primaries held constitutional.**

The provision of. Rev. St. Tex. art. 3093a, as added by Acts 38th Leg. 2d Called Sess. (1923) c. 32, § 1, prohibiting negroes from voting at Democratic primary elections, *held* within the police powers of the state, and not in violation of the Fourteenth or Fifteenth Amendment.

In Equity. Suit by Hurley C. Chandler against Pat M. Neff, Governor of the State of Texas, and others. On motion to dismiss bill. Granted.

J. M. Woods (of Newton & Woods) and Carl Wright Johnson (of Chambers & Johnson), both of San Antonio, Tex., for plaintiff.

W. A. Keeling, Atty. Gen., Frank M. Kemp, Asst Atty. Gen., and Douglas, Carter & Childers, of San Antonio, Tex., for defendants.

WEST, District Judge. Hurley C. Chandler, plaintiff, a negro citizen of the United States, brings his suit against the Governor and the Attorney General of the state of Texas, and the county Democratic chairman of Bexar county, defendants.

Plaintiff charges that he desires to exercise his right to vote at a primary election of the Democratic electors in the selection of that party's candidates for state and national offices; that article 3093a of the Revised Civil Statutes of Texas (as added by Acts 38th Leg. 2d Called Sess. [1923] c. 32, § 1) forbids a negro from participating in such Democratic primary solely because he is a negro, and that he cannot become a Democrat or a Democratic elector. The article is as follows:

"All qualified voters under the laws and Constitution of the state of Texas who are bona fide members of the Democratic party, shall be eligible to participate in any Democratic party primary election, provided such voter complies with all laws and rules governing party primary elections; however, in no event shall a negro be eligible to participate in a Democratic party primary election held in the state of Texas, and should a negro vote in a Democratic primary election, such ballot shall be void and election officials are herein directed to throw out such ballot and not count the same."

Plaintiff charges that this article is in conflict with the Fourteenth and Fifteenth Amendments to the federal Constitution. The Fourteenth Amendment reads as follows:

"All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

Plaintiff charges that the Fourteenth Amendment is violated because, in enacting the article in question, the state of Texas made and is now attempting to enforce a law which abridges the privileges and immunities of citizens of the United States, and likewise denies to him the equal protection of its laws; that the act violates the Fifteenth Amendment, in that it denies and abridges his right to vote on account of his race and color: The Fifteenth Amendment reads as follows:

"Section 1. The right of citizens of the United States to vote shall not be denied or abridged by the United States or by any state on account of race, color, or previous condition of servitude.

"Sec. 2. The Congress shall have power to enforce this article by appropriate legislation."

The plaintiff prays that defendants be enjoined from enforcing the provisions of the act of the state of Texas, and that he be accorded his right to participate as an elector in Democratic primary elections in this state.

To this petition the defendants file a motion to dismiss, in which the sufficiency of plaintiff's petition in matters of law is challenged upon the following grounds: (1) That, the subject-matter of the suit being political in its nature, a court of equity is without jurisdiction to determine the issues involved, or to award the relief prayed for. (2) That plaintiff is not a proper party to maintain the suit. (3) That there is a failure to join necessary defendants, other than those named. (4) That the Fourteenth and Fifteenth Amendments do not, from the allegations in the petition, appear to have been violated. (5) That the bill shows that the primary election referred to was not an election, within the meaning of the Fourteenth and Fifteenth Amendments to the Constitution of the United States.

It is touching the motion to dismiss and the issues of law raised thereby that are to be passed on and determined here. Both parties have submitted, during the past few months, elaborate and able briefs of authorities and arguments in support of their several contentions. The rights of the negro citizen to vote in many of the states of the Union have frequently been considered by the highest courts in those several states, and by the federal courts. A careful consideration has been given to the authorities cited, and the following conclusions have been reached:

The two main questions presented by the defendants as to the sufficiency of plaintiff's petition are: (a) Has a court of equity power, jurisdiction, and authority to grant and enforce the remedy of injunction against the defendants? and (b) does the act in question abridge the privileges or immunities, or is the right to vote denied or abridged because of race or color of the plaintiff, a negro citizen of the United States?

[1] The power of a court of equity by way of injunction has never in England, nor in America, been extended to political affairs. The issue raised by the petition as a whole, is clearly the assertion of a political right granted by the Constitution of the United States and denied by an act of the state of Texas. The remedy sought is that the hands of the defendants be stayed and enjoined from enforcing the act. The petition, therefore, is seeking from this court of equity power and authority which is denied by law. This position is supported by elementary principles of jurisdiction, and particularly by the following authorities: Green v. Mills, 69 Fed. 852, 16 C. C. A. 516, 30 L. R. A. 90, being an opinion by a Circuit Court of Appeals rendered by Justice Fuller, who subsequently, for many years, sat as Chief Justice of the Supreme Court of the United States; Giles v. Harris, 189 U. S.

475, 23 Sup. Ct. 639, 47 L. Ed. 909; In re Sawyer, 124 U. S. 200, 8 Sup. Ct. 482, 31 L. Ed. 402; Walls, et al. v. Brundidge, 109 Ark. 250, 160 S. W. 230, Ann. Cas. 1915C, 980; 10 Ruling Case Law, p. 342, § 92, and numerous authorities there cited.

[2] Plaintiff contends that the Act of March 4, 1913, which now appears in the statutes as section 266 of the Judicial Code (Comp. St. § 1243), enlarged by statute the jurisdiction of a court of equity, and gives it cognizance of suits which involve the constitutionality of an act of a state, in requiring the presence of three judges in passing upon a question of importance. The purpose of this act was not intended to, and does not, enlarge the equity powers of this court. Generally speaking, the object of the statute was to limit the powers of a Judge of the United States District Court, who theretofore had passed upon the constitutionality of state laws, and had exercised singly the right to award or withhold injunctions as to their enforcement. The amendment, so far as the presence of three judges is concerned, limits their functions to hearings upon the question of issuance of temporary interlocutory restraining orders, and does not extend to the case on its merits. Before the additional judges should be called to the assistance of the District Judge sitting in the case, it must appear from the allegations in the petition that a cause of action is stated which on its face entitles the plaintiff to the relief sought; therefore the court as now constituted is authorized to judge of the sufficiency of plaintiff's petition in point of law. The court sustains the first ground mentioned.

[3] This might render it unnecessary to decide the second question, but it has been well and clearly presented, and even though it may be unnecessary to decide it, nevertheless the parties, because of the importance of the questions, are entitled to the judgment and opinion of the court upon the exceptions which directly and indirectly rest upon it.

[4] The answer to the second question is practically found in the answer to the question as to whether or not a primary election is that character of election that comes within the meaning of the Fourteenth and Fifteenth Amendments to the Constitution of the United States. Generally speaking, a primary election is understood to be one which is limited to qualified electors of a political party, for the purpose of nominating that party's candidates for state or national offices to be voted upon at a future election of the people generally. The Revised Statutes of Texas (article 3085) define a primary election as:

"An election held by the members of an organized political party for the purpose of nominating the candidates of such party to be voted for at a general or special election, or to nominate the County Executive officers of a party."

Various and elaborate provisions and requirements as to elections are set forth in the Revised Civil Statutes of Texas in chapter 10a, and amendments thereof. An authority has tersely stated that primary elections are not "elections," but merely nominating devices.

The right and power of the state to promote the health and general welfare of its people is a right reserved to itself, and is not granted to the national government; that is to say, it retains its police powers, which necessarily include the power to regulate its internal and political

affairs, and to enact statutes covering elections within its borders. There can, therefore, be no question that the state has the power and authority to pass laws of that character, nor is any doubt of it raised by the pleadings or arguments here; the only question presented being as to whether or not the state had the right and power to pass an act which, as plaintiff contends, had the effect to deny and abridge his right to vote because of his race or color. The decisions of the various states, passing upon and interpreting the extent to which they may go in limiting the rights of voters, are in more or less conflict, and the reasoning of the great lawyers and judges upon each side of the controversy are enlightening and fairly well balanced. There seems, however, to be no dispute as to the definition of a "primary election." A Louisiana case (State v. Mitchell, 121 La. 374, 46 South. 436) declares:

"A primary is nothing but a means of expressing party preference, and it would cease to be that if by the admission of outsiders its result might be the very reverse. * * * If, therefore, there could not be a primary under our Constitution without the admission of outsiders, the consequence would be that * * * a primary would be impossible."

It is also held that the Legislature has the power to regulate primary elections and prescribe party tests. This is held in Socialist Party v. Uhl, 155 Cal. 793, 103 Pac. 188. The primary law of California was held valid, and further that the Legislature had authority to prescribe tests, both as to electors and as to candidates for office. The court says:

"The power of a political party to prescribe such a test * * * may not be doubted; and, if the party can prescribe such a test, so also can the Legislature."

Any reasonable test of party affiliation may be required by the Legislature. Many cases are cited in support of this principle. A reference to the Digests, Corpus Juris, and Cyc. gives numbers of citations in support of the point. In direct line with these authorities is the case of Koy v. Schneider, 110 Tex. 369, 218 S. W. 479, 221 S. W. 880; also Waples v. Marrast, 108 Tex. 5, 184 S. W. 180, L. R. A. 1917A, 253.

The balancing of authorities, and the weight of authority, if in doubt, is settled by the Supreme Court of the United States in Newberry v. United States, 256 U. S. 232, 41 Sup. Ct. 469, 65 L. Ed. 913. It was there held that primary elections "are in no sense elections for an office, but merely methods by which party adherents agree upon candidates whom they intend to offer and support for ultimate choice by all qualified electors." It therefore may be considered as determined that the state of Texas was within its powers in providing its tests of qualification of Democratic electors, and in providing by its articles that negroes were not permitted to vote in a Democratic primary election it was within the due exercise of its police powers which were reserved to it.

[5] The Fourteenth Amendment guarantees privileges and immunities which the states are forbidden to deny or abridge, which are such as depend immediately on the Constitution of the United States, and which refer to citizens of the United States in that relation and character, and not such rights as accrue from state citizenship. See 11 Corpus Juris, p. 802; In re Slaughter House Cases, 16 Wall. 36, 21

L. Ed. 394; 8 Cyc. pp. 1037, 1038, and authorities cited. Privileges and immunities are only such as owe their existence to the federal government, its national character, its Constitution, or its laws. Railway v. Eggen, 252 U. S. 553, 40 Sup. Ct. 402, 64 L. Ed. 713; Owmbey v. Morgan, 256 U. S. 94, 41 Sup. Ct. 433, 65 L. Ed. 837, 17 A. L. R. 873. From the allegations of plaintiff's petition it is apparent that the immunity and privilege which he claims is denied him is his right to vote in a Democratic primary election. The authorities quoted amply demonstrate the Constitution of the United States did not intend to include such a right in the words "privileges and immunities."

[6] It is therefore held that the act excluding plaintiff from participating in a primary election, such as is in issue by this petition and this motion, does not deprive the plaintiff of any rights guaranteed him by the Fifteenth Amendment to the Constitution of the United States, and that consequently the act in question does not violate any of the provisions of the Constitution mentioned.

The above conclusions require that the defendants' motion to dismiss should be sustained; and it is accordingly so ordered. A formal order to that effect will be drawn and filed as of this date.