**REPUBLIC PICTURES CORPORATION
v. KAPPLER.**

No. 13109.

Circuit Court of Appeals, Eighth Circuit.

Oct. 29, 1945.

Rehearing Denied Nov. 26, 1945.

SANBORN, Circuit Judge, dissenting.

544

Paul Ahlers, of Des Moines, Iowa (E. D. Perry, Robert J. Bannister, and E. B. Carpenter, all of Des Moines, Iowa, on the brief), for appellant.

Walter F. Maley, of Des Moines, Iowa (Ted E. Hartung, of Des Moines, Iowa, on the brief), for appellee.

Before GARDNER, SANBORN, and THOMAS, Circuit Judges.

GARDNER, Circuit Judge.

This was an action brought by appellee as plaintiff to recover for overtime pay, under the provisions of the Fair Labor Standards Act of 1938, Title 29, U.S.C.A. § 201 et seq., for a period of time between February, 1941, and June, 1943. He was employed by the manager of the Iowa state branch of Republic Pictures Corporation, at its Des Moines office. At all times here material defendant was engaged in the moving picture business, with its principal place of business in New York City. It maintained a branch distributing agency at Des Moines, Iowa, and it owned, handled, possessed, marketed and shipped moving picture films to points both in the State of Iowa, and to points outside of that state. After the films were shipped from either New York or New Jersey to Des Moines, Iowa, they were leased or sold to exhibitors within and without the State of Iowa. Defendant employed about ten people, including plaintiff, at its branch office in Des Moines. Plaintiff was known as a booker, and it was his duty to book the films shipped from New York and New Jersey on the dates the pictures would fit into the booking situation, and it was his duty to see that the films were kept in uniform order, and to see that they were booked in proper order so that the films reached the exhibitors in time for their theater use and to see that the films were returned on time so as to be forwarded to other points designated by him, and to establish a booking arrangement fixing the sequence in which pictures were released, and to assist in handling and keeping the contractual obligations of the exhibitor with defendant. He also had to see that the films were forwarded by the exhibitor to the next nearest exhibitor leasing or renting the films, or arrange for their return to the branch office at Des Moines. He directed the transportation companies and other agencies to whom the films might be delivered for transportation to the points designated. This directing work was done largely by telephone, telegraph, and through the mails. The trial court concluded as a matter of law, "That plaintiff was during the time of his employment engaged in interstate commerce and that the principal part of his activities was in such employment."

As an affirmative defense defendant pleaded a special statute of limitations limiting time for commencing actions on claims arising pursuant to any federal statute to a period of six months after the accrual of such claim. The action was commenced in September, 1944, more than six months after its accrual, but the trial court held the state statute of limitations ineffectual as being an attempt by the state to invoke power belonging exclusively to the federal government.

On this appeal defendant contends, as it contended in the trial court, that (1) plaintiff was not engaged in commerce; (2) the Iowa statute of limitations bars recovery.

Defendant admits that it is engaged in interstate commerce, but it denies that the evidence shows that plaintiff was so engaged. It admits too that plaintiff's activities are necessary to its interstate commerce.

Section 6 of the Fair Labor Standards Act of 1938, Title 29 U.S.C.A. § 206, provides for the payment of minimum wages to employees "engaged in commerce or in the production of goods for commerce." Section 3 of the Act, Title 29 U.S.C.A. § 203, defines commerce as follows: " 'Commerce' means trade, commerce, transportation, transmission, or communication among the several States or from any State to any place outside thereof."

The same section of the Act provides that for the purposes of the Act "an employee shall be deemed to have been engaged in the production of goods if such employee was employed in producing, manufacturing, mining, handling, transporting, or in any other manner working on such goods, or in any process or occupation nec-

essary to the production thereof, in any State."

Plaintiff does not contend that he was engaged in the actual production of goods for commerce. As has been observed, he kept records which were essential to the movements of the goods of the employer in commerce. It must be conceded that the test as to whether an employee is engaged in commerce is somewhat more exacting than the test as to whether his occupation is necessary to production for commerce. Armour & Co. v. Wantock, 323 U.S. 126, 65 S.Ct. 165. The words, however, should not be so limited by construction as to defeat the purpose of Congress, but should be interpreted in a manner consistent with their practical meaning and effect in the particular situation. Overstreet v. North Shore Corporation, 318 U.S. 125, 63 S.Ct. 494, 87 L.Ed. 656. The practical test to be applied is whether, without the particular service, interstate commerce would be impeded or abated. Overnight Motor Transp. Co. v. Missel, 316 U.S. 572, 62 S.Ct. 1216, 86 L.Ed. 1682; Overstreet v. North Shore Corporation, supra. Great remoteness, however, renders the act inapplicable. McLeod v. Threlkeld, 319 U.S. 491, 63 S.Ct. 1248, 87 L.Ed. 1538. Such cases as Fox Film Corporation v. Trumbull, D.C.Conn., 7 F.2d 715, involving the power of a state to regulate or tax the exhibition of moving picture films brought into the state through interstate commerce have, we think, no bearing here on the question of the meaning of a federal statute passed by Congress in the exercise of its control over interstate commerce. As said by the Supreme Court in Binderup v. Pathe Exchange, 263 U.S. 291, 44 S.Ct. 96, 100, 68 L.Ed. 308: "It does not follow that because a thing is subject to state taxation it is also immune from federal regulation under the Commerce Clause."

In adopting the Fair Labor Standards Act of 1938, Congress clearly indicated its purpose to leave local business to the protection and regulation of the state, but a mere temporary break in the interstate transportation of goods by placing them in a warehouse awaiting final delivery, or, as in the instant case, a series of deliveries and transmission to and from the place of temporary rest, does not remove the goods from commerce within the meaning of the Act. Walling, etc., v. Jacksonville Paper Co., 317 U.S. 564, 63 S.Ct.

332, 335, 87 L.Ed. 460. As said in the last cited case: "* * * if the halt in the movement of the goods is a convenient intermediate step in the process of getting them to their final destinations, they remain 'in commerce' until they reach those points. Then there is a practical continuity of movement of the goods until they reach the customers for whom they are intended."

Defendant was not shipping the films to Des Moines to be stored nor for final delivery, but its business depended upon these films being kept in circulation. Plaintiff was an active factor in keeping the films in such circulation and use. We think it clear that the transportation of the films and their use must be viewed as a continuity, embracing shipments from New York and New Jersey to Des Moines, Iowa, and the shipment of them to and from Des Moines to other parts of Iowa and other states. Plaintiff's contact with and participation in interstate commerce were substantial. His services were essential to the movement of commerce, and hence he was engaged in commerce within the meaning of the Act. United States v. Darby, 312 U.S. 100, 61 S.Ct. 451, 85 L.Ed. 609, 132 A.L.R. 1430; Schmidt v. Peoples Telephone Union, 8 Cir., 138 F.2d 13.

Was plaintiff's action barred by the Iowa special statute of limitations? The statute relied upon is embodied in Section 1, Chapter 267, Acts of the 50th General Assembly, which became effective March 23, 1943. This section reads as follows: "Section 1. In all cases wherein a claim or cause of action has arisen or may arise pursuant to the provisions of any Federal statute wherein no period of limitation is prescribed, the holders of such claim or cause of action may commence action therein within but not after a period of six months after March 1, 1943, if such claim or cause of action arose prior to March 1, 1943, or within but not later than six months after the accrual of such claim or cause of action if such claim or cause of action arose after March 1, 1943."

The Fair Labor Standards Act of 1938 contains no provision limiting the time for commencing actions thereunder. Ordinarily, in the absence of legislation by Congress, the courts of the United States apply the statute of limitations of the state in law actions. The state statutes of limitations are considered as rules of decision and binding on federal courts. Thus, in the

546

absence of a provision in the federal statute prescribing a limitation, the statute of the particular state in which the action may be brought is applicable to an action to enforce a liability under a particular statute. Payne v. Ostrus, 8 Cir., 50 F.2d 1039, 77 A.L.R. 531; Chicago & N. W. R. Co. v. Ziebarth, 8 Cir., 245 F. 334; Harrison v. Remington Paper Co., 8 Cir., 140 F. 385, 3 L.R.A.,N.S., 954, 5 Ann.Cas. 314; Rawlings, Receiver v. Ray, 312 U.S. 96, 61 S.Ct. 473, 85 L.Ed. 605; McDonald v. Thompson, 184 U.S. 71, 22 S.Ct. 297, 46 L.Ed. 437; McClaine v. Rankin, 197 U.S. 154, 25 S.Ct. 410, 49 L.Ed. 702, 3 Ann.Cas. 500.

Title 28, U.S.C.A. § 725, provides that, "The laws of the several States, except where the Constitution, treaties, or statutes of the United States otherwise require or provide, shall be regarded as rules of decision in trials at common law, in the courts of the United States, in cases where they apply."

By virtue of this statute a state statute of limitations was held controlling in the above cited cases. The adjudicated cases which apply the state statute of limitations in a federal court action are those in which a general statute of the state has been held to be applicable to the particular cause of action, the language of which was so general that all similar cases were included. In the instant case, the statute applies only to those claims or causes of action created or growing out of federal statutes. It arbitrarily singles out all actions involving the assertion of rights created by or flowing from an act of Congress. The general Iowa statute of limitations (C. 487, Code 1939), prescribing the time within which actions may be brought, contains nine separate classes of actions. The classifications referring to contracts fix the limitations as follows: On written contracts, ten years; on contracts not in writing and accounts, five years.

 A state may not discriminate against rights accruing under federal laws. McKnett v. St. Louis & S. F. R. Co., 292 U.S. 230, 54 S.Ct. 690, 78 L.Ed. 1227; Pufahl v. Estate of Parks, 299 U.S. 217, 57 S.Ct. 151, 81 L.Ed. 133. Except the special statute directed at the causes of action arising under federal law, every other limitation on an action at law or suit in equity in the Iowa statutes is directed at the nature of the claim asserted without reference to the authority which creates the

right asserted. This is a discrimination against the United States. The action for overtime under the statute is an action on contract; at least, the federal statute is bottomed upon a contract of employment. As said in Northwestern Yeast Co. v. Broutin, 6 Cir., 133 F.2d 628, 630: "The federal statute is premised upon the existence of an employment contract. * * * The action for double compensation may be considered as debt or as an action for wages due under the employment agreement."

Were it not for the fact that plaintiff's right can be traced to a federal statute, he could have brought his action in five years after its accrual if his contract were not written or he could have brought it in ten years if it were written. His claim or cause of action is discriminated against solely because it arises under a federal statute. This discriminatory treatment of a claim arising under a federal statute in effect makes inferior congressional enactments and rights which under our jurisprudence are intended to be paramount and supreme. As said by the Supreme Court in Stewart & Co. v. Sadrakula, 309 U.S. 94, 60 S.Ct. 431, 436, 84 L.Ed. 596, 127 A.L.R. 821: "Where enforcement of the state law would handicap efforts to carry out the plans of the United States, the state enactment must, of course, give way."

While the sphere of sovereignty of the federal government is a limited one, yet its power over the subjects committed to it is full and complete and its laws are "the supreme Law of the Land * * * any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." Art. 6, U. S. Constitution. As a federal right is here involved, the state can not justify a discrimination against such right. Miles v. Illinois Central R. Co., 315 U.S. 698, 62 S.Ct. 827, 86 L.Ed. 1129, 146 A.L.R. 1104.

In Pufahl v. Estate of Parks, supra, an action was brought in a state court by the receiver of a national bank to recover stockholders' liability under a federal statute. Holding that the receiver was governed by the law of the forum with respect to the marshaling of assets, priority of distribution, etc., the court said [229 U.S. 217, 57 S.Ct. 157]: "This is not to say that a state may deny all remedy for the substantive right arising out of the federal statute * * *; it is merely to say that if the state does not discriminate against the re-

*ceiver's claim in favor of others of equal dignity and like character,* there is no warrant for exempting the claim from the effect of local statutes governing procedure or limiting the time for prosecution of action." (Italics supplied.)

See, also, Campbell v. City of Haverhill, 155 U.S. 610, 15 S.Ct. 217, 39 L.Ed. 280.

 Here, the state has singled out federal claims or causes of action as such and has prescribed a shorter period of limitation for the bringing of such actions than that prescribed for the bringing of similar actions arising or based upon other than federal laws. The statute violates Article 6 of the Constitution in that it "[discriminates] against rights arising under federal laws." McKnett v. St. Louis & S. F. R. Co., supra [292 U.S. 230, 54 S.Ct. 692]. Its enforcement would result in denying to those seeking to assert such claims, the equal protection of the law. 14th Amendment, Constitution, Sec. 1. Equal protection of the law in its constitutional sense implies that all litigants similarly situated may appeal to the courts for relief under like conditions and without discrimination.

We conclude that this special statute of limitations can not be enforced in federal court. The judgment appealed from is therefore affirmed.

Plaintiff asks for the allowance of attorney fees on this appeal. The trial court allowed him $300 as compensation for his attorneys in the trial court. An attorney fee of $250 on this appeal is hereby allowed.

SANBORN, Circuit Judge (dissenting).

In my opinion, there is no adequate basis for ruling that the Iowa statute of limitations in suit is unconstitutional. In enacting the Fair Labor Standards Act, Congress saw fit to omit a provision limiting the time within which rights created by the Act might be asserted. Congress could, no doubt, have required that claims based upon the statute should be barred after six months from the time of their accrual. Since the Act fails to prescribe any period of limitations, each state, I think, is at liberty to fix the time within which actions to enforce rights granted by the Act shall be commenced.

This is clearly an action to enforce a right created by a federal statute which prescribes no period of limitation, and the action, therefore, comes within the purview of the Iowa statute of limitations in suit. Compare, Order of Railroad Telegraphers v. Railway Express Agency, Inc., 321 U.S. 342, 348, 64 S.Ct. 582, 88 L.Ed. 788, and Moore v. Illinois Central R. Co., 312 U.S. 630, 61 S.Ct. 754, 85 L.Ed. 1089.

A statute of limitations does not take away any right of action, but merely limits the time within which the right may be asserted. Turner v. People of State of New York, 168 U.S. 90, 94, 18 S.Ct. 38, 42 L.Ed. 392; Mattson v. Department of Labor, 293 U.S. 151, 155, 55 S.Ct. 14, 79 L.Ed. 251. In other words, such a statute does not impair any substantive right, but affects only the time within which the remedy to enforce it shall be available. "A man cannot be said to be denied, in a constitutional or in any rational sense, the privilege of resorting to courts to enforce his rights when he is given free access to them for a length of time reasonably sufficient to enable an ordinarily diligent man to institute proceedings for their protection." Canadian Northern R. Co. v. Eggen, 252 U.S. 553, 562, 40 S.Ct. 402, 404, 64 L. Ed. 713. See and compare, Terry v. Anderson, 95 U.S. 628, 633, 24 L.Ed. 365; Chemung Canal Bank v. Lowery, 93 U.S. 72, 77, 23 L.Ed. 806; Mills v. Scott, 99 U. S. 25, 27, 25 L.Ed. 294; Vance v. Vance, 108 U.S. 514, 520, 521, 2 S.Ct. 854, 27 L.Ed. 808; Turner v. People of State of New York, supra, page 94 of 168 U.S., page 40 of 18 S.Ct., 42 L.Ed. 392; Wilson v. Iseminger, 185 U.S. 55, 62, 63, 22 S.Ct. 573, 46 L.Ed. 804; United States v. Morena, 245 U.S. 392, 397, 38 S.Ct. 151, 62 L.Ed. 359; Atchafalaya Land Co. v. F. B. Williams Cypress Co., 258 U.S. 190, 196, 197, 42 S.Ct. 284, 66 L.Ed. 559; 34 Am.Jur., pages 27-33.

The plaintiff had no vested interest in a particular limitation, and the Legislature of Iowa could prescribe a limitation where none existed before or could change one already established, "provided adequate means of enforcing the right remain." Terry v. Anderson, supra, page 633 of 95 U.S., 24 L.Ed. 365.

I have found no case involving the question of the validity of a statute of limitations, in which the Supreme Court of the United States has concerned itself with the propriety or fairness of the basis adopted by a state Legislature for classifying causes of action. Statutes of limitation are, in their nature, necessarily somewhat arbitrary and discriminatory. There seems

to be no provision in the Federal Constitution which prohibits a State from providing a special period of limitation for a cause of action of a certain kind or for a designated class of actions, so long as the time allowed is sufficient to permit enforcement of substantive rights. I think that the time allowed by the statute of limitations in suit cannot, as a matter of law, be said to be so short as to invalidate the statute. Compare, Turner v. People of State of New York, supra, page 94 of 168 U.S., page 40 of 18 S.Ct., 42 L.Ed. 392, and Mills v. Scott, supra, page 27 of 99 U.S., 25 L. Ed. 294.

In Eggen v. Canadian Northern R. Co., 8 Cir., 255 F. 937, this Court, with one judge dissenting, held that a statute of limitations of the State of Minnesota was discriminatory and therefore unconstitutional. In doing so, it relied upon general language found in cases which did not involve the precise questions. Judge Hook, who dissented, referred to this in his dissenting opinion in that case (page 940 of 255 F.). The Supreme Court reversed this Court, in 252 U.S. 553, 40 S.Ct. 402, 64 L.Ed. 713. While the Eggen case did not raise the same question of discrimination which is presented here, that case discloses the hazards involved in ruling that state statutes of limitation are unconstitutional on the ground that they are discriminatory.

Since I can find no sufficient justification for ruling that the Iowa statute of limitations in suit is violative of the Constitution of the United States, I respectfully dissent from so much of the majority opinion as holds to the contrary.